## Asociación de Señoras Damas del Santo Asilo de la Villa de Ponce *v.* Diana et al.

### Appeal from the District Court of Ponce.

#### No. 789.—Decided June 29, 1912.

WILL—MISJOINDER OF PARTIES DEFENDANT—MISJOINDER OF ACTIONS.—In the case at bar the court held that in accordance with section 104 of the Code of Civil Procedure no misjoinder of parties defendant or of actions existed, because the grounds of this suit being the fulfilment of a will all the questions arising should be decided definitively and finally in one suit joining all the parties interested.

ERROR—EVIDENCE—PROOF OF ORGANIZATION OF CHARITABLE ASSOCIATION—CHARITABLE ASSOCIATION CONSTITUTED DURING SPANISH SOVEREIGNTY.—In the case at bar it was held that the court below committed an error in not admitting as evidence for its own further information a volume of the work entitled *Legislación Ultramarina,* adapted and annotated by Don Joaquín Rodríguez San Pedro, published under the authority of the Minister for the Colonies, on page 201 of volume 2 of which it is shown that the plaintiff association's regulations were approved by a Royal Order of November 11, 1863.

ID.—CHARITABLE ASSOCIATIONS CONSTITUTED DURING SPANISH SOVEREIGNTY—CAPACITY TO ACQUIRE PROPERTY BY WILL.—Upon an examination of the evidence introduced in this case it is necessary to conclude that the plaintiff association was organized and commenced to operate in accordance with law in the year 1863 and had capacity to acquire property by will at the time of the death of Silva in 1873.

CAPACITY OF CHARITABLE ASSOCIATION TO SUE.—The plaintiff association having been registered in accordance with the Law of Associations of 1888, this fact appearing in the record by virtue of a certificate issued by the Assistant Secretary of Porto Rico, said association having operated without interruption after the change of sovereignty and the existence thereof having been acknowledged by several of the parties connected with this suit, there is no doubt that said association has capacity to sue and claim the delivery of the property which constitutes the inheritance which is the subject matter of this action.

ID.—WILL—CONSTRUCTION—COMPLIANCE WITH WILL OF TESTATOR.—The plaintiff association having shown its capacity to acquire property and to sue and having proved the allegations of its complaint, *Held:* That the case should be governed by the principles established in the judgment rendered by this court in deciding the first appeal taken in this suit (*Santo Asilo de Ponce v. Martínez et al.,* 16 P. R. R., 361) and in virtue thereof that in compliance with the last will of the testator the property to which the will refers should be delivered to the plaintiff association so that it may preserve it as far as possible under a good administration and expend the net proceeds thereof in aiding the indigent sick of the asylum.

The facts are stated in the opinion.

*Mr. José Tous Soto* for appellant.

*Messrs. C. López de Tord, Nemesio R. Canales* and *Francisco Jiménez* for respondents.

MR. JUSTICE DEL TORO delivered the opinion of the court.

On July 28, 1909, the *Asociación de Señoras Damas del Santo Asilo de la Villa de Ponce* filed a complaint in the District Court of Ponce against Josefa Diana Martínez and others prosecuting an action of ejectment. The complaint having been demurred to on the ground that it did not allege sufficient facts to constitute a cause of action, the same was sustained and the plaintiff took an appeal to this Supreme Court, and this court, on May 24, 1910, reversed the judgment appealed from on the ground that, from any point of view that the questions involved in said case be considered, the complaint alleged sufficient facts to constitute a cause of action. (*Santo Asilo de Ponce* v. *Martínez et al.,* 16 P. R. R., 361, 373.)

The case having been remanded to the court below, the plaintiff, with leave of court, on September 23, 1910, filed its amended complaint, as follows:

"1. That the plaintiff is a civil association of a benevolent character, consisting in hospital attendance for the sick poor, duly established and recorded in the registry of associations, in accordance with the provisions of the Law of Associations of June 13, 1888, and with legal capacity to sue and be sued; and that said plaintiff is also a benevolent endowment, with its constitution and by-laws duly approved by the Queen of Spain by Royal Order of November 11, 1863.

"2. On September 17, 1873, Juan Bautista Silva, being unmarried and having no heirs by force of law, made a will before Notary Francisco Parra Duperón, in which, among other things, he provided as follows:

" 'Inasmuch as I have no heirs by force of law and I do not wish that what I own should be divided, since it cost me many years of work and economy, it is my deliberate will that after setting apart the aforementioned legacy for María Juliana and Ramona Isabel, children of the freedwoman, Carmen, and two cows with calf, one for

each of them, as well as the amount necessary to meet the expenses of my illness and burial, all the residue of my estate, composed of lands, animals, and debts in my favor which I have specified, be taken possession of and delivered to my good friend Juan Apolinario Laboy, a resident of Ponce, in whom I have reposed full confidence for a long time and who disinterestedly serves and accompanies me during my illness, I hereby appoint and constitute him my sole voluntary heir to such property *during his lifetime,* under the following *necessary conditions which I impose upon him:* First, that the net usufruct or product of such property, after payment of the municipal and other legal taxes, be divided into two equal portions, one for said heir Laboy, in just compensation of his good administration and zeal for said interests, and the other to provide for the destitute sick of the *Santo Asilo de Caridad de las Damas de Ponce,* the liquidation of profits and delivery of this portion to be made at the end of every year by the said heir and administrator, without any outside intervention of any kind, leaving it as a matter of conscience inasmuch as the product from properties of the character I leave depends, more or less, on whether the seasons of the year are favorable or not and on there being no lack of rains at the proper time. Second, that as my special purpose is to prevent my properties, which have cost me so many privations and work, from being dismembered or divided, upon the death of Laboy they are to pass, under the proper inventory, to the person who may deserve the confidence of the said Juan Apolinario Laboy, with the same powers and for the same purpose which I have stated, and to this end the moment the latter shall enter upon the ownership and possession of my said property he *must* execute in *proper form his last will,* naming the person who is to succeed him in said trust, said power of substitution which I grant Laboy in this connection to be transmitted, as I have said, to a person of his confidence, by the latter to another person in whom he has trust, and thus successively, always by a formal will or other authentic act which each will execute successively the moment he enters upon his duty as *substitute heir:* and, third, that whether by reason of this requisite of the substitution in due time, as I recommend, or through the claims of any relative of mine or outsider, or in any other way or through any other cause or claim it should be sought to have said estate—that is, the property constituting it—considered vacant or intestate, I desire, and it is my will, that in the latter case, upon the death of the said Laboy, my first heir, such property pass to the said *Santo Asilo de Damas de Ponce,* which I appoint my substitute heir, recommending especially to this society that it maintain such prop-

erty, as far as possible, under good administration, and apply only the income therefrom to alleviating the condition of the sick poor of said institution.'

"3. That the *Santo Asilo de Damas de Ponce,* referred to in the above will, is the plaintiff association—that is to say, the *Asociación de Señoras Damas de Ponce*—known and generally called by the name which appears in the said will.

"4. That among the properties left by the testator, Juan Bautista Silva, are included the following: (*a*) A rural estate of 400 *cuerdas;* (*b*) another rural estate of 126 *cuerdas;* another rural estate of 50 *cuerdas;* (*e*) a tract of 2 *cuerdas;* (*g*) a tract of a *cuerda* and a half; (*h*) a mortgage credit for $600 upon a house and lot on Union Street, Ponce.

"5. That Juan Bautista Silva died on December 17, 1873, without having revoked or modified his will above referred to and without having left any heirs by force of law; and upon said date his executor and conditional voluntary heir, Juan Apolinario Laboy, entered into the possession of the property of the estate, applying the income therefrom as prescribed by the testator.

"6. That on September 30, 1875, Juan Apolinario Laboy appeared before Francisco Parra Duperón, a notary of Ponce, and executed before him an instrument of substitution of inheritance (which does not possess the requisites and formalities of a will) in which, after inserting the clause of the will of Juan Bautista Silva transcribed in this complaint, he stated:

" 'That the inventory of the property of Silva having been made and he having been placed in possession thereof, he appears, by this notarial act, for the purpose of complying with the condition imposed in the will, and appoints and names as the substitute heir of the said Silva the legitimate wife of the declarant, Dominga Fernández de Laboy, a resident of this city, and *in the event of the death or other legal incapacity of the latter,* her foster son, José Laboy, 15 years of age, who lives with her, and in the event of his still being a minor he appoints as guardian *ad bona,* Juan José Vázquez, a resident and landowner of this district and a person in whom he has full confidence, relieving him from any bond or security for the discharge of this office, and conferring upon such substitute heirs the same full powers granted by Silva to the declarant under the will and clause thereof inserted.'

"7. That Juan Apolinario Laboy died on May 7, 1888, intestate, and before his wife, Dominga Fernández Verdez, without leaving a will, and upon the death of her husband, without any title other than the document referred to in the preceding statement, she took posses-

sion of the property of the Estate of Juan Bautista Silva and administered it until her death, delivering annually to the plaintiff association one-half of the income from said property.

"8. That Dominga Fernández Verdez made a will before Notary Francisco Parra on April 24, 1869, at which date neither Juan Apolinario Laboy nor Juan Bautista Silva had died, nor had the latter made his will, and, therefore, she had not taken possession of the property left by the said Juan Bautista Silva; and neither in said will of Mrs. Verdez nor in any other document does she make any reference to the administration and management of the said property nor designate any person to administer the same upon her death.

"9. That Dominga Fernández Verdez in her said will constituted as her universal heir José Laboy Fernández, and that the latter, upon the death of Dominga Fernández Verdez, which occurred about January 15, 1891, without any title whatsoever, unlawfully took possession of the property left at his death by Juan Bautista Silva, alleging that he was entitled thereto under the clause of the will of Juan Apolinario Laboy, transcribed in the seventh statement of fact.

"10. That at the death of José Laboy Fernández, the wife of said Laboy, Josefa Diana Martínez, took unlawful possession of the property left by Juan Bautista Silva, alleging that she had a right to do so because she had been appointed by her husband, José Laboy, the administratrix of the property left by Juan Bautista Silva, and that said defendant is at present in possession of such property, with the exception of the tracts of land hereinafter described.

"11. That Josefa Diana Martínez, by means of possessory proceedings instituted in and approved by the former District Court of Ponce, in which she falsely alleged that she possessed as owner the estates described under letters (*a*) and (*b*), has recorded said real property in her own name in the registry of property without even mentioning the plaintiff association in said proceedings; and, subsequently, she endeavors to have her record of possession converted into a record of ownership, which she was not successful in doing because of the opposition of plaintiff. The possession of the real property (*a*) was recorded in the name of Josefa Diana Martínez exclusively, *without prejudice to a third person having a better right to the property,* in the Registry of Property of Ponce, at folio 187 of book 8 of Santa Isabel, estate 291, first record; and estate (*b*), also without prejudice to third persons, at folio 144 of book 8 of Santa Isabel, estate 198, first record.

"12. This paragraph refers to the lease of the property (*b*) above described made by the defendant, Josefa Diana Martínez, for several

periods of time (finally 15 years) without the consent of the plaintiff. Said lease was transferred to the defendant, Carlos Cabrera.

"13. That José Laboy, alleging that he is the owner of a tract of land of 13.72 *cuerdas* forming part of the estate (*b*) belonging to the Estate of Juan Bautista Silva, which fact was known to Laboy, instituted proceedings to establish the possession of said tract in his favor, which were approved on May 6, 1892, without prejudice to third persons having a better right to the ownership, and it was recorded in his name in the Registry of Property of Ponce, at folio 140, volume 4, of Santa Isabel, estate 151, under the following description:  (Description follows.)

"14. That this tract was sold by Laboy to Rufino Tricoche, this sale being recorded in the registry of property, and the latter sold 1 *cuerda* to Julio Mercado and leased him the remaining 12.33 *cuerdas* for a term of six years, to expire March 2, 1910; and that said Tricoche and Mercado possess said estates at the present time, the ownership of which is vested in the plaintiff.

"15. That on February 9, 1890, Luis Burgos y Martínez obtained in his favor from the Municipal Court of Santa Isabel a judgment establishing his possession to a tract of land described as follows:  (A rural estate of 50 *cuerdas* is described.)   That the petitioner alleged to have purchased 6 *cuerdas* of the estate of 50 from Apolinario Laboy, without a written instrument and without stating the date, and that the said 6 *cuerdas* are actually 6.91 *cuerdas* and are a part of estate (*a*), which is a part of the properties left by Juan Bautista Silva, and its ownership is at present vested in the plaintiff.

"16. That this tract of 6.91 *cuerdas*, as a part of the estate of 50 *cuerdas* above described, is at present possessed by the Santa Isabel Florida Sugar Company, a corporation constituted and incorporated under the laws of Porto Rico, jointly with another tract of 2.47 *cuerdas* which are a part of estate (*a*) and have been joined, without any title, by the said Santa Isabel Florida Sugar Company and its predecessors in interest to the estate of 50 *cuerdas*, and which tract of 2.47 *cuerdas* added to the 691 above mentioned, make a total of 9.31 *cuerdas*, which are marked letter (?) on the plan exhibit (?) hereto attached (*sic*).   The possessory proceedings of said estate of 50 *cuerdas* were originally recorded in the Registry of Property of Ponce, at folio 15, of book 4, of Santa Isabel, estate 140, without prejudice to a third person having a better right to said estate.

"17. The said tract of 6.91 *cuerdas* above referred to is described as follows:  (Description follows.)

"And the description of the tract of 2.47 *cuerdas* is the following: (Description follows.)

"The description of the tract of 9.38 *cuerdas* made up of the two tracts above described is the following: (Description follows.)

"18. That in May, 1904, Cleobulino Colón Zayas prosecuted possessory proceedings to a tract of 3 *cuerdas* which was a part of the estate (*a*), alleging to have purchased it by private document from José Laboy, who knew that said tract of 3 *cuerdas* was a part of estate (*a*) belonging to the Estate of Juan Bautista Silva, and described as follows: (Description follows), which property, by virtue of said proceedings, was recorded in the registry of property under number 294, volume 8, of Santa Isabel, folio 160, and is at present possessed by Julio Vibas, who purchased it from Vicente Usera, and the latter from Cleobulino Colón, the ownership to said tract being vested exclusively in the plaintiff.

"19. That Juana Campos, also known by the name of Juana Yordán, without any title whatsoever, withholds the possession of a tract of land of 3 *cuerdas*, which is a part of the estate (*a*), the description of said tract of 3 *cuerdas* being as follows: (Description follows.)

"20. That Baldomero Rodríguez, without any title whatsoever, withholds possession of a tract of land which is a part of estate (*a*), and described as follows: (Description follows.)

"21. That facts relative to the lease of the estate (*c*) to the defendant, Torres Grau, for a period of 10½ years and without the consent of the plaintiff are referred to in detail.

"22. This paragraph refers to the lease of the estates (*d*) and (*e*) to the defendant, Carlos Santiago, for a period of six years, to be extended three years longer and for a rental of 90 *pesos* annually, the lessee, José Laboy, having acknowledged the receipt of all the rentals, no part whereof having ever been paid to the plaintiff.

"23. This paragraph deals with the lease of the estate (*g*) made by José Laboy to Gustavo Cabrera and the heirs of Enrique Cabrera without the consent of the plaintiff.

"24. The persons who constituted the Estate of Gustavo Cabrera upon his death are named in this paragraph, who, jointly with the heirs of Enrique Cabrera, are at present in the possession of the estate (*g*).

"25. That by public deed of August 28, 1888, José Laboy made a mortgage to Dominga Fernández Verdez to secure the payment of 1,850 *pesos*, currency at that time, which sum he acknowledged to have received from her, and bound himself to pay it back to her on

August 28, 1889, with interest at 1 per cent per month, upon the following estate: (A tract of 6½ *cuerdas,* with a house thereon, is described under letter [*d*].) That in another deed of August 16, 1888, Dominga Fernández Verdez stated that the sum belonging to Laboy belonged to the Estate of Juan Bautista Silva managed by her, and that said mortgage, therefore, did not belong to her but to said estate; and finally, by another deed of May 3, 1890, José Laboy conveyed to Dominga Fernández Verdez the estate mortgaged as aforesaid in payment of the debt secured by said mortgage.

"26. That Carlos Cabrera y Paz has been in possession of the estate (*b*) from August 1, 1904, and is at present in possession of it, receiving the products and income of the same, and that the value of such rents and products is $15 per *cuerda* per annum, at least; and that in the same manner Tomás Torres Grau is at present in possession of estate (*g*) and was in possession of it from said date, receiving the fruits and rents thereof, the value of which per annum is at least $10."

The plaintiff in its complaint prayed that the real estate above described and derived from the Estate of Silva be declared to belong to it; that the plaintiff be placed in possession of said estates; that the possessory proceedings above referred to and their entry of record in the registry and other proceedings, some of which were unnecessary because the plaintiff had dismissed its action with reference to some of the defendants, be declared void.

The defendant, Josefa Diana Martínez, demurred to the amended complaint, alleging: (1) That there is a misjoinder of parties defendant; (2) that there is a misjoinder of actions; and (3) want of facts to constitute a cause of action; and she also answered the complaint as follows:

### FIRST DEFENSE.

1. We deny the first allegation of the amended complaint and especially that the plaintiff has legal capacity to sue and be sued and that it had the legal capacity to acquire properties at the time of the death of Juan Bautista Silva on December 17, 1873.

2. We also deny the third allegation of said complaint.

3. We deny the ninth paragraph of the complaint, and, instead, we allege the following: That upon the death of Dominga Fernández Verdez her heir, José Laboy Fernández, took possession of all the properties possessed by her as her testamentary heir and, among others, he took possession of the properties forming the Estate of Silva, inasmuch as his said ancestor, Mrs. Fernández Verdez, had possessed them as owner up to the time of her death. And we allege that when the said José Laboy Fernández took possession of said estates he acted in good faith and in the belief that they belonged to him as owner in his capacity of heir as aforesaid, and with the knowledge and consent of *El Santo Asilo de Damas de Ponce.*

4. We deny the tenth allegation of the amended complaint in that it alleges that the defendant, Josefa Diana Martínez, illegally took possession of the Estate of Silva; and, instead, we further allege that when she took possession of said estate she acted in good faith, with just and legal title, and by virtue of the testament executed by her husband, José Laboy Fernández, who designated her as his substitute heir.

5. We deny the allegations contained in the eleventh paragraph of the amended complaint in the manner in which they have been alleged. And we state that it is true that the defendant, Diana Martínez, prosecuted a certain possessory proceeding, as alleged in the eleventh paragraph of the complaint, and that subsequently she tried to convert said record of possession into one of ownership by prosecuting the corresponding proceedings as legal owner of the properties forming the Estate of Silva and respecting always the right to one-half of the usufruct designated for the support of the sick poor in the *Santo Asilo de Caridad de las Damas de Ponce.*

6. We deny the allegation contained in the twelfth paragraph of the complaint, in that it states that the leases were made without the consent and knowledge of the plaintiff, to

her grave prejudice and loss of her interest and for a grossly low rental; and we allege that all the agreements of lease and sublease mentioned in the twelfth paragraph of the complaint were made with the knowledge of the *Santo Asilo de Damas de Ponce* without any opposition from said *Asilo,* and the same have been ratified several times by it; and we further allege that the rental, at the time when said agreements were made, was the just and current value of the leased lands.

7. That the lease mentioned in allegation 21 of the complaint was made with the consent of the *Santo Asilo de Damas,* and the same has been ratified by it several times; and we further allege that the rental agreed upon, at the time when the lease was made, represented the true value of the leased lands.

8. That the agreements alleged in paragraphs 22 and 23 of the complaint were made with the consent of the *Santo Asilo de Damas de Ponce* without any opposition from said *Asilo de Damas,* and they have been ratified several times by it; and we allege that the rental, at the time when the lease was made, was the true and current value of the leased lands.

### SECOND DEFENSE.

We specifically allege that the plaintiff has no legal capacity to sue and be sued, and that the plaintiff at the time of the death of Juan Bautista Silva had no legal capacity whatsoever to acquire properties.

### THIRD DEFENSE.

That the defendant, Josefa Diana Martínez, and her ancestors and predecessors in interest have been in possession of said estates in question, with just title and in good faith, for over a period of 1, 6, 10, and 20 years; and therefore we further allege that said possession having been held in the capacity of owner there is in favor of said defendant the period of prescription to acquire the ownership, as provided

by judicial order of April 4, 1899, in connection with section 1840 of the Civil Code of Porto Rico now in force, and section 1858 of the same code and 1957 of the former Civil Code, and Law III, Title VIII, Book XI, of *Novísima Recopilación* of Spain; and we also allege that said period of 1, 6, 10, and 20 years has never been interrupted by the institution of any judicial proceeding, nor in any other manner.

#### FOURTH DEFENSE.

That the defendant, Josefa Diana Martínez, and her ancestors and predecessors in interest have been in possession as owners of the properties herein claimed for over a period of 30 years without said period being interrupted in any way. And we submit to the consideration of this honorable court that there is in favor of said defendant the extraordinary period of prescription necessary to acquire the ownership, as provided by Law V, Title VIII, Book XI, of the *Novísima Recopilación* of Spain, and section 1959 of the former Spanish Civil Code, and section 1840 of the Civil Code of Porto Rico now in force.

#### FIFTH DEFENSE.

That the plaintiff has allowed the period of 30 years to elapse without instituting the present action, and therefore we submit to the consideration of this honorable court that this action has expired by prescription, in accordance with the provisions of Law V, Title VIII, Book XI, of the *Novísima Recopilación* of Spain, and section 1959 of the Spanish Civil Code, and section 1840 of the Civil Code of Porto Rico.

#### SIXTH DEFENSE.

That the *Santo Asilo de Damas de Ponce* has always acknowledged that the defendant, Josefa Diana Martínez, and her ancestors and predecessors in interest, the said Juan Apolinario Laboy, his wife, Dominga Fernández Verdez, and José Laboy Fernández, were the owners of the properties

claimed in the present action, allowing said parties to possess said estates and permitting them to lease the same and to exercise all the rights inherent in their ownership; and therefore we submit to the consideration of this honorable court that the plaintiff is estopped from executing acts contrary to it and is estopped from exercising the present action.

The defendant, Tomás Torres Grau, answered the amended complaint by denying, generally and specifically, all and every one of its allegations and pleading several defenses in his favor, among them that he is a *bona fide* third party and that the plaintiff had no legal capacity to acquire the estate of Silva at the time of the death of the testator, nor has it now the capacity to bring this suit. At the trial of this case this defendant introduced in evidence a certain document showing that he had delivered since February 17, 1908, to the defendant, Josefa Diana Martínez, the estate (*c*) which he leased from her.

The plaintiff filed the following refutation of the defense of prescription:

That it expressly refutes the allegation of prescription necessary to acquire the ownership, as alleged in the third defense pleaded in the answer to the amended complaint, as well as the allegation of extraordinary prescription necessary to acquire the ownership, as stated in the fourth defense contained in said answer, because neither the defendant nor her predecessors in interest have been in possession as owners, but as mere managers, and that the possession held by José Laboy and Josefa Diana Martínez was tainted with bad faith. It refutes, also, the allegation of the period of prescription necessary to extinguish an action, as stated in the fifth defense, because the period of 30 years from the time that the plaintiff was capable of exercising this action has not yet elapsed. We oppose the allegation made by the defendant, Josefa Diana Martínez.

The defendants, Juana Campos, or Yordán, and Julio Ribas, filed several demurrers, and the same having been

dismissed, and having failed to answer the complaint within the time granted for that purpose, their default was entered.

The defendant corporation, Santa Isabel Sugar Company, was duly summoned and, having failed to appear, its default was entered.

On September 20, 1910, the plaintiff filed a motion dismissing its action as to the defendants, Julio Mercado, Rufino Tricoche, Baldomero Martínez, the Estates of Gustavo Cabrera and Enrique Cabrera, and also as to Carlos Santiago, with reference to the estates (*d*) and (*f*). For greater clearness it should be observed that the estates (*d*) and (*f*) were eliminated from the fourth allegation of the original complaint and there was included in allegation 25, a property marked (*d*) with a house thereon, which undoubtedly is the same estate originally marked (*f*).

On September 29, 1910, the plaintiff filed a motion stating that it had reached a settlement of all the differences and claims arising from this suit against the defendant, Carlos Santiago, and therefore dismissed its action as to said defendant, Santiago. The said defendant, Carlos Santiago, filed a motion on the same date stating to the court that he was in possession of and ready to hand over to the court the estates of 6½ or 8 *cuerdas,* more or less, and the estate of 2¼ *cuerdas,* both situated in *barrio* Machuelo Abajo, in the municipality of Ponce, and referred to in the complaint.

And, finally, the plaintiff filed a motion dismissing its case as to the defendant, Carlos Cabrera, without costs, because a settlement had been reached between them which had been the subject of a public deed.

Wherefore, the defendants who originally were: (1) Josefa Diana Martínez, (2) Carlos Cabrera, (3) Tomás Torres Grau, (4) Carlos Santiago, (5) Rufino Tricoche, (6) Julio Mercado, (7) Julio Ribas, (8) Santa Isabel Sugar Company, or Central Cortada, (9) Juana Campos, or Yordán, (10) Baldomero Rodríguez Martínez, (11) Estate of Gustavo Cabrera, and (12) Estate of Enrique Cabrera, were reduced to: (1)

Josefa Diana Martínez, who demurred and answered the complaint; (2) Tomás Torres Grau, who answered the complaint; (3) Juana Campos, or Yordán; and (4) Julio Ribas, all of whom demurred to the complaint and made no further allegations in this suit; and, finally, (5) Santa Isabel Sugar Company, which is in default. The trial having been held, at which both the plaintiff and the defendants introduced their evidence, the court rendered judgment on April 29, 1911, dismissing the complaint with costs to the plaintiff. Said judgment was based upon the opinion rendered by the district judge in which he stated that with reference to the alleged nullity of the clause of the will of Juan Bautista Silva, which is the foundation of the complaint, upon the ground that said clause tried to create a perpetual trust with prohibition of alienation, he accepted the construction given to said clause by this Supreme Court in its decision of May 24, 1910.

It was also held by the trial judge in his opinion that the action instituted by the plaintiff had not expired. "The court is of the opinion that upon the theory of law established by the complaint this action came into existence upon the death of Apolinario Laboy, on May 7, 1888. And it is evident that from said date to the filing of the complaint herein the period fixed by law has not elapsed. With reference to the period of prescription necessary to acquire the ownership, the court is of the opinion that the possession held by the defendant, Josefa Diana Martínez, of the properties in question was not adverse possession antagonistic to the claims of the plaintiff, the only kind of posession that may serve to acquire the ownership by prescription."

But the trial judge also held that the plaintiff had not established its legal capacity and, therefore, dismissed the complaint. His opinion with reference to this question is as follows:

"The question of legal capacity has been argued very extensively by both parties. In the first paragraph of the amended complaint it has been clearly and emphatically established by the plaintiff that it

is a civil association of a benevolent character, and also a benevolent association whose constitution and by-laws were approved by royal order of the Queen of Spain on November 11, 1863. There is a certain vagueness with reference to the question of legal capacity, or personality, in the allegations of the complaint after the same was amended. It is alleged, on one side, that the plaintiff is a benevolent association, and on the other that it is an endowment, which terms seem to imply different meanings; but be that as it may, it is evident that in accordance with the old Spanish law the approval of the sovereign power was necessary in either case. The only evidence introduced by the plaintiff with reference to this point tends to establish the use of certain corporate functions which are insufficient to establish the existence of a *de facto* corporation. It seems to us, also, that the certificate issued by the Secretary of Porto Rico and introduced by the plaintiff is insufficient, from which it appears that the association named '*Asociación de Señoras Damas del Santo Asilo de la Villa de Ponce*' was registered in the registry book of associations, in accordance with article 7 of the Law of Associations of June 13, 1888. Clearly said certificate cannot prove the existence of the legal capacity of the plaintiff on December 17, 1873, at which time the death of the testator, Juan Bautista Silva, took place. Leaving aside the question as to whether said association law had any legal force or not after the change of sovereignty in Porto Rico, as raised by the defendants in their argument, it does not appear from said certificate, the minutes of the meeting of organization, nor the approval of the Governor, and it is therefore insufficient. For these reasons the court believes that it has not been proved that the plaintiff had legal capacity to acquire properties on the death of the testator, Juan Bautista Silva, nor that it has now to sue before the courts of justice, and therefore the complaint is dismissed, with costs to the plaintiff.''

An appeal was taken by the plaintiff from said judgment and only said plaintiff and the defendant, Josefa Diana Martínez, have appeared before this court through their attorneys.

The plaintiff contends in its brief that ''the only question to be decided is the legal capacity of the plaintiff to take a legacy and to claim it judicially.''

The defendant, Josefa Diana Martínez, contends in her brief that ''the only question to be decided in this case, as

it has been stated by the adverse party in its brief, is the legal capacity of the plaintiff to institute the action of ejectment presented by the allegations of its complaint.''

And it is so. This case comes for a second time before this Supreme Court. In the opinion rendered by this court, as a foundation for its decision of May 24, 1910, we examined the merits of the issues and we held that upon the allegations of the complaint it appeared that the plaintiff was entitled to the estates claimed. The evidence adduced herein supports the allegations of the complaint and shows not only that the provisions of the testament relative to the designation of the so-called ''administrative heirs'' were not strictly complied with, but that the defendant, Josefa Diana Martínez, recorded the possession and tried to record the ownership in her own name of the most valuable properties of the estate, omitting to make any reference whatever to the right of the plaintiff association to said properties, and that José Laboy recorded in his name and sold some small tracts of land belonging to the Estate of Silva. Such acts executed by the defendant and by her husband, Laboy, together with the circumstances of this case, demand that the will of the testator be carried out and that all of his properties be finally handed over to the plaintiff association, to be by it kept under good management as far as possible and to apply their net income to the support of the sick poor in the hospital.

There is no misjoinder of parties defendant nor of actions, in accordance with the provisions of section 104 of the Code of Civil Procedure. The testament of Silva is the only ground of this suit. Everything else is a derivation from said main document, and all the questions herein raised must be decided finally in one action bringing in all the parties in interest.

Both the acquisitive and extinctive prescription alleged cannot be sustained. This is so clear that it is unnecessary to go into a long discussion, and we will constrain ourselves

to citing as applicable to this question the words of the district judge above transcribed.

Therefore, the conclusion must be reached that the plaintiff had capacity to inherit and has it now to sue, and there can be no question as to its rights to recover the properties of the estate of Silva; hence the attitude assumed before this Supreme Court by the plaintiff and by the defendant, Josefa Diana Martínez, the latter being the only real party in interest who had fought this case to the end.

Let us now examine the question of legal capacity.

As a part of the transcript of the record there is a bill of exceptions which, among other things, stated the following:

"The plaintiff offered in evidence to show the existence of the royal order of November 11, 1863, authorizing the creation of the *Asilo de Damas de Ponce* and approving its by-laws, volume 2, page 201, of the work '*Legislación Ultramarina*,' by Joaquín Rodríguez San Pedro, and approved and authorized by the Minister for the Colonies. The court, for the time being, reserved its decision and afterwards decided to refuse said evidence, whereupon the plaintiff stated: 'We desire to make another motion. In the belief that this book would be admitted as evidence, because it is generally so admitted before the courts, and in the belief also that the court might take judicial notice of that royal decree without the necessity of proving it, and because we could not find in Ponce a set of the *Official Gazette*, we have not tried to bring a certified copy of that decree or the original *Official Gazette*, and therefore we now request the court to grant us some time to introduce in evidence a certificate from the original *Official Gazette* or the original itself.' The defendant objected. The court decided as follows: 'The court is of the opinion that no surprise existing in this case on the part of the plaintiff, there is no ground for a continuance of the trial and the motion is denied.' The defendant then took an exception."

In our opinion the trial court erred in refusing to admit as evidence for its better illustration the book offered by the plaintiff, which has been cited as an authority by the Supreme Court of the United States (*Jover* v. *Insular Government,* 221 U. S., 633) and by the Supreme Court of Porto Rico.

We have before us said book, which is entitled *"Legislación Ultramarina,* revised and annotated by Joaquín Rodríguez San Pedro, approved and authorized by the Minister for the Colonies in accordance with the Council of State." Book II, page 201, states the following:

"1863. November 11. Royal Order authorizing the organization of an *Asilo de Caridad* in Ponce and approving its by-laws.

"To His Excellency. Sir: A letter has been received by this department, bearing number 367 and dated September 10, ultimo, with which Your Excellency transmits a copy of the paper relative to the organization of an *Asilo de Caridad* in Ponce, at the request of Enriqueta Vinsch de Prats and other ladies of said city; Her Majesty, in view of the favorable reports made upon this matter, has granted the necessary authority and has approved the by-laws therewith transmitted. At the same time the Queen has requested me to state to Your Excellency that she has seen with pleasure this evidence of the charitable sentiments of the people of Ponce. By Royal Order, etc. Madrid, November 11, 1863. The Governor Captain General of the Island of Porto Rico."

The by-laws, composed of 20 articles, are therein set forth at length. In the first article it is stated that the main object of the association is to relieve the suffering people, and for that purpose a charity asylum shall be established for the poor of the district; in the second article it is stated that His Excellency, the Governor Captain General of Porto Rico, is recognized by the association as its protector, and in the fourth article it is established that the association shall be governed by a board of directors which shall administer the funds and will promote its progress and development.

The error committed by the district court may now be corrected by us, taking under consideration, as we have done, said book, published under the authority of the Minister for the Colonies, and for that reason we must recognize the existence of the royal approval of the by-laws of the plaintiff association.

It has been argued that said royal order has no legal force in Porto Rico because it has not been shown that it was

countersigned by the Governor nor that it was published in the *Gazette*. With reference to the first point it appears by implication from the evidence, to which we shall refer hereafter, that the Governor countersigned it; and with regard to the second point, as it was a provision of a private nature in a certain respect its publication in the *Gazette* was not absolutely necessary. (1 Rodríguez San Pedro, *Legislación Ultramarina*, 81, 82, and 83.)

From the minute book of the plaintiff association introduced in evidence at the request of the defendant, Josefa Diana Martínez, two minutes appear whose pertinent parts read as follows:

"1. In the city of Ponce, on September 27, 1863, this meeting having been called in the residence of the Reverend José Balsino David, vicar of this parish, and attended by the ladies and gentlemen mentioned in the margin, to wit, the president, Mrs. Prats, (the names of all follow). In accordance with a notice published in a newspaper of this city and served upon all those who had voluntarily contributed to the carrying out of the plan of building a charitable asylum for the poor of this district and which for some time past has been the object of the *Asociación de Damas del Santo Asilo* of this city, the president, Mrs. Enriqueta Vinsch de Prats, spoke as follows: That in accordance with a decision of the provisional board of directors the necessary authority was requested from His Excellency the Governor and Captain General of this Island to erect this asylum, and at the same time submitting to him for his approval the by-laws of this association, and His Excellency having by letter of the 9th instant (which was read) granted his authority and approved the by-laws, without prejudice to the action which might be taken by the Queen, whom God preserve, and to whom this matter has been referred, the provisional board of directors has deemed it its duty to call this meeting for the purpose of informing the subscribers of the progress made up to date of the philanthropic purpose in question, and of the fact that upon the granting of said authority the *Asociación de Señoras Damas del Santo Asilo* has become finally and officially constituted, and now the election of a board of directors is in order, the provisional board ceasing to-day, and which shall govern and manage the same subject to its by-laws. The motion of Mrs. Prats having been carried and after the unanimous declaration of the final organi-

zation of the *Asociación de Señoras Damas del Santo Asilo* of the city of Ponce the election of a new board of directors was then taken up * * *.

"2. In the city of Ponce, on January 26, 1864, a meeting was called of the board of directors of the *Asociación de Damas del Santo Asilo,* composed of the gentlemen mentioned in the margin, and the following resolutions were adopted. A letter from the mayor of this city transmitting another letter from His Excellency the Captain General was read, in which he inserts the royal order of November 11, ultimo, by which Her Majesty the Queen, whom God preserve, has granted her sovereign authority for the organization of this *Asociación de Damas del Santo Asilo* of the city of Ponce, at the same time approving the by-laws of said association; and it was then resolved by the board to publish it through the newspapers and to express to His Excellency the joy felt by the board for the successful ending of his action. Another letter from the mayor was read in which he stated that His Excellency the Captain General had granted the request made to him by this association, through its president, to obtain a transfer of the amount of 1,800 *pesos* now existing in the municipal hospital as a hospital fund, and the board being fully satisfied resolved to collect the same." * * *

In view of such probatory elements we must conclude that the plaintiff association was organized and began to exist, in accordance with law, from the year 1863, and therefore had capacity to acquire properties by testament upon the death of Silva in 1873.

Some years passed by. The Law of Associations of 1888 was approved and the plaintiff then registered in accordance with the provisions of said law. It also appears from a certificate issued by the Assistant Secretary of Porto Rico, which reads as follows:

"Island of Porto Rico, city of San Juan. Know all men by these presents, That I, Martin E. Gill, Assistant Secretary of Porto Rico, do hereby certify: That the association known as '*Asociación de Señoras Damas del Santo Asilo de la Villa de Ponce,*' of Ponce, P. R., is registered under No. 180 in the 2d volume of the register of associations, which is kept in this office, in compliance with requirements of article 7 of the Law of Associations enacted June 13, 1888. In testimony whereof, I have hereunto subscribed my name at San Juan,

Porto Rico, this 5th day of November, 1904. Martin E. Gill, Assistant Secretary of Porto Rico.''

The change of sovereignty took place and the plaintiff association, as a matter of fact, continued to exist uninterruptedly, carrying out its purpose, and it exists to-day. Its existence with reference to the Estate of Silva was acknowledged by the same testator, by Juan Apolinario Laboy, by Dominga Fernández Verdez, by José Laboy, and by the same defendant, Josefa Diana Martínez, by their repeated acts, and to deny its existence would imply a contradiction of the facts as they really exist.

In view of such proofs it is impossible to deny the capacity of the plaintiff to acquire the Estate of Silva at the time of his death and to sue now for the recovery of the properties of said estate.

In view of the foregoing statements and of the reasons alleged in this opinion and in the other opinion rendered by us in support of our judgment of May 24, 1909, we hold that the judgment appealed from should be reversed, and in lieu thereof judgment should be rendered declaring: (1) That the properties claimed as forming the Estate of Juan Bautista Silva belong to the plaintiff association to be preserved by it under good management as far as possible, and to spend its net income in the support of the sick poor; (2) that the defendants, Josefa Diana Martínez, Juana Campos, or Yordán, Julio Ribas, and Santá Isabel Sugar Company, have no right whatever to the properties now possessed by them as forming part of said estate, and the same should be handed over to the plaintiff association within 15 days from the date of this judgment; (3) that the possessory proceedings referred to in the complaint and their entry of record in the registry are void. The defendant, Josefa Diana Martínez, will pay her own costs and one-half of the plaintiff's costs.

*Reversed.*

Chief Justice ·Hernández and Justices MacLeary, Wolf and Aldrey concurred.